IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PAUL E WEST, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:23-cv-1371-G-BN |
| | § | |
| R&K ENTERPRISE SOLUTIONS, | § | |
| JC CONNORS, and STEVEN | § | |
| PICKEL, | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the undersigned United States magistrate judge
for pretrial management 28 U.S.C. § 636(b) and a standing order from United States
Senior Judge A. Joe Fish. *See* Dkt. No. 34.

Defendant JC Connors and R&K Enterprise Solutions ("R&K Enterprise" or
"R&K") (collectively "R&K Defendants") filed a Motion to Dismiss for Failure to State
a Claim [Dkt. No. 35]. Plaintiff Paul E. West filed a response, *see* Dkt. No. 50, and
Defendants JC Connors and R&K filed a reply, *see* Dkt. No. 56.

Defendant Steven Pickel filed a Motion to Dismiss for Failure to State a Claim
[Dkt. No. 38]. Plaintiff West filed a response, *see* Dkt. No. 38, and Pickel filed a reply,
*see* Dkt. No. 58.

West filed a Second Amended Complaint [Dkt. No. 59] without leave of Court,
which the Court struck and unfiled *sua sponte* [Dkt. No. 60]. West then filed a First
Motion for Leave to File Second Amended Petition [Dkt. No. 61]. The R&K

Defendants filed a response, *see* Dkt. No. 68, and Pickel filed a response, *see* Dkt. No. 69. West did not file a reply.

## Background

This case concerns alleged violations of the Americans with Disabilities Act of 1990 ("ADA"), the Texas Commission on Human Rights Act ("TCHRA"), and tortious interference with a contract.

Plaintiff Paul West alleges that he was an employee of R&K Enterprise and that Steven Pickel was "a liaison" between himself and R&K. *See* Dkt. No. 31 at 1. West told Pickel, on or around May 31, 2022, that he "could not guarantee his ability to attend to or perform his tasks at work due to a severe injury to his lower leg." *Id.*

West alleges that R&K terminated him the next day without reason. *See id.*

West filed claims for discrimination with the Equal Employment Opportunity Commission ("EEOC"), which granted him a right to sue letter. *See id.*

West brings claims against all defendants for 1) failure to accommodate under the ADA and TCHRA, 2) discrimination under the ADA and TCHRA, and 3) tortious interference with an existing contract. *See id.* at 2-4.

West filed his complaint in this Court [Dkt. No. 3] as a pro se plaintiff, after which Defendants filed Motions to Dismiss [Dkt. No. 19; Dkt. No. 25]. Through counsel, West filed a response [Dkt. No. 29] and his First Amended Petition [Dkt. No. 31]. The Court found Defendants' Motions to Dismiss moot [Dkt. No. 33], leading Defendants to file the current Motions to Dismiss [Dkt. No. 35; Dkt. No. 38].

West filed a Second Amended Petition without leave of Court, which the Court

struck and unfiled. *See* Dkt. No. 59; Dkt. No. 60.

West then filed a Motion for Leave to File Second Amended Petition [Dkt. No. 61]. Defendants filed responses [Dkt. No. 68; Dkt. No. 69], and West did not file a reply.

**Legal Analysis**

I. <u>Motion to Amend</u>

Because the standards by which the Court evaluates a motion for leave to amend the pleadings vary according to whether the motion was filed before or after the deadline established in the scheduling order, the court must determine, as an initial matter, whether the motion was filed before or after the deadline. *See, e.g* ., *Orthoflex, Inc. v. Thermotek, Inc.*, Nos. 3:11-cv-08700-D & 3:10-cv-2618-D, 2011 WL 4398279, at *1 (N.D. Tex. Sept. 21, 2011) ("Motions for leave to amend are typically governed by Rule 15(a)(2), or, if the time to seek leave to amend has expired, by Rule 16(b)(4) and then by Rule 15(a)(2).").

No scheduling order has yet been entered in this case.

When the party is not subject to an expired deadline for seeking leave to amend, Rule 15(a) requires that leave to amend be granted freely "when justice so requires." FED. R. CIV. P. 15(a)(2). Leave to amend is not automatic, *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005), but the federal rules' policy "is to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading," *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981). The Court "may

consider a variety of factors" when deciding whether to grant leave to amend, "including undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment." *Jones*, 427 F.3d at 994. But Rule 15(a) provides a "strong presumption in favor of granting leave to amend," *Fin. Acquisition Partners, LP v. Blackwell*, 440 F.3d 278, 291 (5th Cir. 2006), and the Court must do so "unless there is a substantial reason to deny leave to amend," *Dussouy*, 660 F.2d at 598; *accord Jebaco Inc. v. Harrah's Operating Co. Inc.*, 587 F.3d 314, 322 (5th Cir. 2009) ("leave to amend is to be granted liberally unless the movant has acted in bad faith or with a dilatory motive, granting the motion would cause prejudice, or amendment would be futile").

"The existence of one of these factors is sufficient to deny leave." *New Orleans Ass'n of Cemetery Tour Guides & Companies v. New Orleans Archdiocesan Cemeteries,* 56 F.4th 1026, 1034 (5th Cir. 2023).

A court may therefore "refuse leave to amend if ... the complaint as amended would be subject to dismissal." *Varela v. Gonzales*, 773 F.3d 704, 707 (5th Cir. 2014) (cleaned up); *see also Legate v. Livingston*, 822 F.3d 207, 211 (5th Cir. 2016) (While "the language of [Rule 15(a)] 'evinces a bias in favor of granting leave to amend,' ... a district court need not grant a futile motion to amend." (quoting *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002) (in turn quoting *Chitimacha Tribe of La. v. Harry L. Laws Co.*, 690 F.2d 1157, 1162 (5th Cir. 1982)); citation

omitted)); *cf. Stem v. Gomez*, 813 F.3d 205, 215-16 (5th Cir. 2016) ("When an amended complaint would still 'fail to survive a Rule 12(b)(6) motion,' it is not an abuse of discretion to deny the motion'" for leave to amend. (quoting *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014))).

Because the Court's futility analysis parallels an analysis of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "[u]nder that standard, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.' [And a] claim is facially plausible if the complaint 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 590 (5th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (in turn quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); internal quotation marks omitted)); *see also Johnson v. City of Shelby,* Miss., 574 U.S. ——, 135 S.Ct. 346, 347, 190 L.Ed.2d 309 (2014) (per curiam) ("[T]o survive a motion to dismiss" under *Twombly* and *Iqbal*, a plaintiff need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that a plaintiff contends entitle him to relief. (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e))); *accord N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 191 (5th Cir. 2015) ("To survive a Rule 12(b)(6) motion to dismiss, the complaint does not need detailed factual allegations, but it must provide the plaintiff's grounds for entitlement to relief – including factual allegations that, when assumed to be true, raise a right

to relief above the speculative level." (footnote and internal quotation marks omitted)).

The United States Supreme Court "has made clear that a Rule 12(b)(6) motion turns on the sufficiency of the 'factual allegations' in the complaint." *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (quoting *Johnson*, 135 S.Ct. at 347), and the Federal Rules of Civil Procedure "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted," *Johnson*, 135 S.Ct. at 346.

But the Court often looks warily at efforts to preempt an analysis of a new cause of action in the context of a dispositive motion by denying leave in the Rule 15(a) context on the basis of futility. *See Reneker v. Offill*, No. 3:08-cv-1394-D, 2011 WL 1427661, at *1 (N.D. Tex. Apr.13, 2011) ("[T]he court's almost unvarying practice when futility is raised is to address the merits of the claim or defense in the context of a Rule 12(b)(6) or Rule 56 motion. The court only infrequently considers the merits of new causes of action in the context of Rule 15(a). The court prefers instead to do so in the context of a Rule 12(b)(6) or Rule 56 motion, where the procedural safeguards are surer." (internal quotation marks omitted)).

The Court generally only denies a proposed amendment as futile where the cause of action is not, in fact, newly pleaded or where a new cause of action fails as a matter of law – that is, cannot be stated, rather than simply possibly has not been sufficiently stated in the proposed amended complaint. *See Jamieson By and Through Jamieson v. Shaw*, 772 F.2d 1205, 1208 (5th Cir. 1985) ("When futility is advanced

-6-

as the reason for denying an amendment to a complaint, the court is usually denying leave because the theory presented in the amendment lacks legal foundation or because the theory has been adequately presented in a prior version of the complaint.").

II.    Motion to Dismiss

In deciding a Federal Rule of Civil Procedure 12(b)(6) motion, the Court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007). To state a claim upon which relief may be granted, Plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, Plaintiffs must allege more than labels and

conclusions, and, while a court must accept all of the Plaintiffs' allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id*. But, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, a plaintiff need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that Plaintiff contends entitle him or her to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (citing Fed. R. Civ. P. 8(a)(2)-(3), (d)(1), (e)); *accord N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 191 (5th Cir. 2015) ("To survive a Rule 12(b)(6) motion to dismiss, the complaint does not need detailed factual allegations, but it must provide the plaintiff's grounds for entitlement to relief – including factual allegations that, when assumed to be true, raise a right to relief above the speculative level." (footnote and internal quotation marks omitted)).

The United States "Supreme Court has made clear that a Rule 12(b)(6) motion turns on the sufficiency of the 'factual allegations' in the complaint." *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (quoting *Johnson*, 135 S. Ct. at 347, and the Federal Rules of Civil Procedure "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted," *Johnson*, 135 S. Ct. at 346. That rationale has even more force in this case, as the Court "must construe the pleadings of pro se litigants liberally." *Andrade v. Gonzales*,

459 F.3d 538, 543 (5th Cir. 2006).

A court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). "Although the [United States Court of Appeals for the] Fifth Circuit has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011). "However, if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.*

And "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *accord Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2008) (directing courts to "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular,

documents incorporated into the complaint by reference, and matters of which a court may take judicial notice").

## Argument

I.    <u>Motions to Dismiss</u>

The R&K Defendants and Pickel both filed Motions to Dismiss with overlapping arguments, and so the undersigned will consider the motions together.

The R&K Defendants and Pickel argue that West's claims under the ADA and TCHRA should be dismissed against Pickel and Connors because 1) the ADA and (as argued by Pickel) TCHRA do not permit individual liability and 2) West has failed to exhaust his administrative remedies as required to state a claim. *See* Dkt. No. 35 at 4-6; Dkt. No. 39 at 4-6.

The R&K Defendants make an additional argument that the claim under the ADA against R&K Enterprise should be dismissed because West has not alleged a qualifying disability. *See* Dkt. No. 35 at 6-7.

All defendants argue the claims against them for tortious interference should be dismissed. *See* Dkt. No. 35 at 4, 7-9; Dkt. No. 39 at 4-5, 7-10

A.    <u>Consideration of Attached Exhibits</u>

The undersigned must first address whether the R&K defendants and West have included matters outside the pleadings requiring the motions to dismiss to be converted to motions for summary judgment.

When a party presents "matters outside the pleadings" with a Rule 12(b)(6) motion to dismiss, the Court has "complete discretion" to either accept or exclude the

evidence for purposes of the motion to dismiss. *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 196 n.3 (5th Cir.1988). But "[i]f ... matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." FED. R. CIV. P. 12(d).

Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

The R&K Defendants attached a copy of the EEOC Charge of Discrimination to their Motion to Dismiss. *See* Dkt. No. 36. They argue that the Court can consider the EEOC charge because it is both referenced in West's complaint and central to his claims. *See* Dkt. No. 36 at 6.

West references filing a claim with the EEOC in his First Amended Petition, and it is central to his claim. *See* Dkt. No. 31 at 1. And, so, the Court should consider the Charge of Discrimination in its Motion to Dismiss. *See Millan v. Bexar Cnty., Texas*, No. SA21CV0659JKPHJB, 2022 WL 62541, at *5 (W.D. Tex. Jan. 5, 2022) ("The attached EEOC documents are referenced in Plaintiff's amended complaint and are central to her claims. Therefore, the Court considers these attachments in the discussion below. Specifically, the EEOC documents are necessary to the Court's

analysis of Defendant's contention that several of Plaintiff's claims are subject to dismissal for failure to exhaust administrative remedies.").

And, even if not referenced in the complaint and central to West's claims, the Court can take judicial notice of the EEOC charge as a public record. *See King v. Life Sch.*, 809 F. Supp. 2d 572, 579 n.1 (N.D. Tex. 2011) ("Even though the EEOC charge is a matter outside the pleading, judicial notice of it may be taken as a matter of public record when deciding a Rule 12(b)(6) motion, especially since its authenticity is uncontested.").

West also attaches emails as appendixes to his responses to both motions to dismiss [Dkt. Nos. 35 & 38]. *See* Dkt. Nos. 51 & 53-1. One set of emails is between West and Pickel, informing Pickel about his injury. *See* Dkt. No. 51 at 4; Dkt. No. 53-1 at 4. The other email is from West Connors to Troy Faaborg and Jeffrey Connors (defendant) regarding Paul West's termination. Dkt. No. 51 at 2; Dkt. No. 53-1 at 2.

As with attachments to Motions to Dismiss, attachments to responses to Motions to Dismiss are subject to the rule that the Court cannot consider exhibits beyond the pleadings. But "[t]he court may also consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims." *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014).

The R&K Defendants address whether the emails between Pickel and West are referred to in the pleadings, stating that

> the Appendix attached to his response notes Plaintiff returned to work immediately following his doctor's visit and that he might have a strained ACL.

> See [DE No. 51, p. 4]. While this Court may consider this email in its analysis of this Rule 12(b)(6) motion as Plaintiff submitted it as central to the claim and it is expressly referenced in the Amended Complaint, see *Scanlan v. Texas A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003), it need not do so in order to grant R&K Defendants' Motion to Dismiss First Amended Petition and dismiss with prejudice this action in its entirety.

Dkt. No. 56 at 3 n.2.

The R&K Defendants do not address whether the Court can consider the termination email in their reply, and Pickel does not address either email in his reply. West does not offer any reason why the Court should consider his exhibits.

In his first amended petition, West alleges that, "[o]n or around May 31, 2022, Plaintiff informed Steven Pickel, a liaison between himself and R&K, that he could not guarantee his ability to attend to or perform his tasks at work due to a severe injury to his lower leg and knee. Th[e] next day, Plaintiff was terminated by R&K without explanation." Dkt. No. 31 at 1. But although West does mention that he notified Pickel of his injury, the emails presented are more evidence of an element of his claim, rather than central to his claim. *See Kaye*, 453 B.R. at 662 ("However, if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint.").

And so, the Court should not consider these emails for the purposes of these Motions to Dismiss. [Dkt. No. 51 at 4; Dkt. No. 53-1 at 4].

And while West alleges he was terminated the day after notifying Pickel of his injuries, he does not reference any communication regarding his termination prior to his assumed notification of termination. And, so, the Court should, in its discretion, decline to consider this email for the purposes of these Motions to Dismiss.

Because the Court is not considering any exhibits outside the pleadings, the Court should not convert this Motion to Dismiss into a Motion for Summary Judgment.

B.      ADA and TCHRA Claims

        1.      Individual Liability Under the ADA and TCHRA

                a.      ADA

"The ADA provides that no employer shall 'discriminate against a qualified individual with a disability because of the disability of such individual.'" *Dunlap v. Fort Worth Indep. Sch. Dist.*, No. 4:21-CV-00790-O-BP, 2021 WL 6503710, at *3 (N.D. Tex. Dec. 15, 2021), *rep. & rec. adopted*, 2022 WL 160242 (N.D. Tex. Jan. 18, 2022) (quoting 42 U.S.C. § 12112).

To prevail on an ADA claim based on discrimination, the plaintiff must show he or she: "(1) suffers from a disability; (2) was qualified for the job; (3) was subject to an adverse employment action; and (4) was replaced by a non-disabled person or was treated less favorably than non-disabled employees." *Amsel v. Tex. Water Dev. Bd.*, 464 F. App'x 395, 399 (5th Cir. 2012) (citing *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995)).

To prevail on an accommodations-based ADA claim, the plaintiff must show: "(1) the plaintiff is a qualified individual with a disability; (2) the disability and its consequential limitations were known to the employer; and (3) the employer failed to make reasonable accommodations for such known limitations." *Villarreal v. Tropical Tex. Behav. Health*, No. 20-40782, 2021 WL 3525023, at *4 (5th Cir. Aug. 10, 2021).

Both Pickel and Connors argue that they cannot be liable under the ADA because the statute only apply to employers, not individuals.

West does not respond to this argument in either of his responses.

The ADA's definition of "employer" is essentially identical to the definition contained within Title VII. *See* 42 U.S.C. § 12111(5)(A) ('The term 'employer' means a person engaged in an industry affecting commerce who has 15 or more employees for each working day ... and any agent of such person"). And courts interpret the ADA consistent with Title VII's provisions. *See, e.g., Brewer v. Lavoi Corp.*, No. 3:13-cv-4918-N, 2014 WL 4753186, at *3 (N.D. Tex. Sept. 24, 2014).

As "Title VII does not impose liability on individuals unless they are 'employers'" and the Fifth Circuit has "repeatedly rejected any individual liability under Title VII", individual liability under the ADA is similarly limited. *Provensal v. Gaspard*, 524 F. App'x 974, 977 (5th Cir. 2013) (per curiam) (citing *Grant v. Lone Star Co.*, 21 F.3d 649, 653 (5th Cir. 1994)); *Baldwin v. Layton*, 300 F. App'x 321, 323 (5th Cir. 2008) (per curiam); *see also Knox-Colburn v. Daniel Healthcare, Inc.*, No. 1:22-CV-44-DMB-DAS, 2023 WL 150005, at *3-4 (N.D. Miss. Jan. 10, 2023) ("[I]ndividuals are not held liable under Title I of the ADA").

And the United States Court of Appeals for the Fifth Circuit recently held that a district court's dismissal of claims was "proper because the Americans with Disabilities Act does not permit individual liability." *Kennemer v. Parker Cnty., Texas*, No. 21-10467, 2022 WL 2610239, at *2 (5th Cir. July 8, 2022).

West alleges that he was employed by R&K. *See* Dkt. No. 31 at 1. West does

not allege any individual allegations against Connors in his first amended petition, but the R&K Defendants allege that Connors is the president and CEO of R&K Enterprise. *See* Dkt. No. 35 at 4. But West still alleges nothing to show that Connors as CEO qualifies as an employer under the statute. *See Dudley v. Texas Instruments, Inc.*, No. CIV.A.3:02-CV-0290-M, 2002 WL 1489527, at *2 (N.D. Tex. July 10, 2002) (finding that a CEO could not be held individually liable under the ADA as an individual supervisor of the plaintiff).

West alleges that Pickel was his "main contact in regards to communicating any day-to-day updates regarding his job to R&K." Dkt. No. 31 at 4. West also describes Pickel as a "liaison between himself and R&K." *See id.* at 1. But neither of these allegations show Pickel as an employer under the statutory definition. *See Shabazz v. Texas Youth Comm'n*, 300 F. Supp. 2d 467, 473 (N.D. Tex. 2003) ("The Court holds that Plaintiff is precluded from bringing an action under the ADA, just as he is under Title VII, against a person acting for an employer.").

Because West has not alleged that either Pickel or Connors are his employers as defined by the ADA, the ADA claims against them should be dismissed with prejudice.

b.    <u>TCHRA</u>

Pickel also argues that the TCHRA does not permit individual liability, and so the claims against him should be dismissed.

The TCHRA "makes it unlawful for an employer to discriminate against an employee for being regarded as having an impairment." *Texas Tech Univ. Health Scis.*

*Ctr. - El Paso v. Niehay*, 671 S.W.3d 929, 932 (Tex. 2023). "To recover under the TCHRA, a plaintiff must prove that the defendant falls within the statutory definition of 'employer.'" *Mustafa v. Texas Workforce Comm'n*, No. 01-22-00878-CV, 2024 WL 3032507, at \*5 (Tex. App. – Houston [1st Dist.] June 18, 2024, no pet.) (citing *Anderson v. Hous. Comm. Coll. Sys.*, 458 S.W.3d 633, 649 (Tex. App. – Houston [1st Dist.] 2015, no pet.).

While the Texas Supreme Court has not explicitly addressed whether individuals are liable under the TCHRA, Texas courts of appeals have found the TCHRA does not permit individual liability. *See Desola v. Mednax, Inc.*, No. 4:16-CV-750-A, 2016 WL 5080090, at \*1 (N.D. Tex. Sep. 16, 2016); *Jenkins v. Guardian Indus. Corp.*, 16 S.W.3d 431, 439 (Tex. App. – Waco 2000, pet. denied) ("Supervisors and managers are not liable in their individual capacities for alleged acts of discrimination under the TCHRA") (citing *DeMoranville v. Specialty Retailers, Inc.*, 909 S.W.2d 90 (Tex. App. – Houston [14th Dist.] 1995), *rev'd on other grounds*, 933 S.W.2d 490 (Tex. 1996).

And this Court has held that "'Texas state and federal courts have uniformly held that supervisory personnel are not liable in their individual capacity under the TCHRA.'" *Jones v. Dallas Cnty.*, No. 3:11-CV-2153-D, 2013 WL 6388441, at \*5 (N.D. Tex. Dec. 6, 2013) (quoting *Marabella v. Autonation U.S.A. Corp.*, 88 F. Supp. 2d 750, 752 (S.D. Tex. 2000)); *see also Medina v. Ramsey Steel Co.*, 238 F.3d 674 (5th Cir. 2001) ("The Texas Labor Code authorizes suits to remedy age discrimination against "employers." *See* TEX. LAB. CODE ANN. §§ 21.002, 21.051(8). However, supervisors and

managers are not considered employers under the Texas Labor Code and, therefore, are not individually liable for age discrimination.").

As analyzed under the section on the ADA claims, West has not alleged that Pickel is his employer. And so, the Court should dismiss the TCHRA claims against him with prejudice.

### 2.    Failure to Exhaust Administrative Remedies

Even if Connors and Pickel were West's employers, the ADA and TCHRA claims against them should be still dismissed because West has failed to exhaust his administrative remedies.

West states in his pleadings that he filed claims with the EEOC for discrimination under the ADA and that the EEOC granted him a right to sue letter against the defendants. *See* Dkt. No. 31 at 1. But West's EEOC charge only names R&K Enterprise Solutions. *See* Dkt. No. 36 at App. 001; Dkt. No. 40 at App. 001.

And, so, Connors and Pickel argue that the ADA and TCHRA claims against them should be dismissed because West did not include them in the EEOC charge, failing to exhaust his administrative remedies. *See* Dkt. No. 35 at 5; Dkt. No. 39 at 5-7.

Before a plaintiff may pursue ADA claims in federal court, he or she "must first exhaust all available administrative remedies." *Patton v. Jacobs Eng'g Grp., Inc.*, 874 F.3d 437, 443 (5th Cir. 2017); 42 U.S.C. § 6104(e)(2) ("No action ... shall be brought ... if administrative remedies have not been exhausted.").

A plaintiff has exhausted the available remedies once he: "(1) files a timely complaint with the EEOC, (2) the agency dismisses the claim, and (3) they inform him of his right to sue in federal court." *Bouaziz v. AZT Corp.*, No. 3:10-cv-53-B, 2010 WL 2813403, at *1 (N.D. Tex. July 9, 2010)). Likewise, plaintiffs claiming violations "under the TCHRA must first exhaust administrative remedies prior to bringing civil action. *Schroeder v. Tex. Iron Works, Inc.*, 813 S.W.2d 483, 485 (Tex .1991) (noting that the purpose of TCHRA is to provide for the execution of policies embodied in Title VII")). *Id.* at *2. "Exhaustion occurs when a plaintiff receives a right to sue letter or waits 180 days for the complaint to be resolved." *See id.*

"'[A] party not named in an EEOC charge may not be sued under Title VII [or the ADA].'" *Doohan v. ExxonMobil*, No. 4:21-CV-01467, 2023 WL 3352228, at *4 (S.D. Tex. May 10, 2023), *rep. & rec. adopted*, No. 4:21-CV-01467, 2023 WL 3550211 (S.D. Tex. May 18, 2023) (applying the "general rule" that "a party not named in an EEOC charge may not be sued under Title VII" to the ADA) (internal citation omitted); *see also Martin v. Orbital Energy Grp., Inc.*, No. 3:22-CV-1968-B, 2023 WL 2169909, at *4 (N.D. Tex. Feb. 22, 2023) ("A party must be named in an EEOC Charge before the party who files the charge may bring suit against it. 42 U.S.C. § 2000e-5(f)(1) ("[A] civil action may be brought against the respondent named in the charge … by the person claiming to be aggrieved…."); *Way v. Mueller Brass Co.*, 840 F.2d 303, 307 (5th Cir. 1988) ("[A] party not named in an EEOC charge may not be sued under Title VII.")).

But "[t]he Fifth Circuit recognizes two exceptions to this named-party requirement (1) where 'there is an identity-of-interest' or (2) where the unnamed party had 'actual notice of the charge and an opportunity to participate in conciliation.'" *See Martin*, 2023 WL 2169909, at *4 (citing *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014), *as revised* (Sept. 18, 2014)).

Although West argues that his EEOC charge put West and Pickel sufficiently on notice, this Court has found that parties do not have actual notice when not named in the EEOC charge. *See* Dkt. No. 35 at 2; *Martin*, 2023 WL 2169909, at *4 ("[Plaintiff's] claim that the Charge put [Defendant] on notice of his claims is unavailing. A party must be named in an EEOC Charge before the party who files the charge may bring suit against it.") (citations omitted). And West has not argued that either Pickel or Connors share an identity of interest with R&K Enterprise Solutions.

Although "[f]ailure to exhaust is an affirmative defense that a defendant must raise[,] ... affirmative defenses, including non-exhaustion, can be appropriately asserted on a 12(b)(6) motion, [but] dismissal on such a basis is appropriate only if the defense is evident on the face of the complaint." *Luebano v. Off. Depot, L.L.C.*, No. 22-50767, 2023 WL 4249268, at *3 (5th Cir. June 29, 2023). While not attached to the complaint, the undersigned can consider the EEOC charge as it is properly referenced in the complaint and central to West's claims. *See Nunez-Renck v. Int'l Bus. Machines Corp.*, No. 3:23-CV-1308-D, 2024 WL 1495787, at *2 (N.D. Tex. Apr. 5, 2024)

(dismissing claim after considering the EEOC charge attached to the motion to dismiss and finding Plaintiff had failed to exhaust administrative remedies).

Because it appears on the face of the complaint that West has not exhausted his administrative remedies as to the ADA and TCHRA claims against Pickel and Connors, the claims against them should be dismissed. As the only claim not dismissed for lack of individual liability in the previous section is the claim under the TCHRA against Connors, the Court should dismiss the TCHRA claims against Connors without prejudice for failure to exhaust administrative remedies.

### 3.    Failure to Allege a Disability

Defendant R&K Enterprise argues that all claims against them should be dismissed because West had failed to allege a disability, but other than allegations that the Court should dismiss all claims against R&K for failure to state a disability, R&K does not discuss the TCHRA claim. *See* Dkt. No. 35 at 6-7. R&K argues to dismiss the ADA claim and TCHRA claim for failure to state a disability it its reply, but a court generally will not consider arguments raised for the first time in a reply brief. Dkt. No. 56 at 3-5; *see Cavazos v. JP Morgan Chase Bank, N.A.*, 388 F. App'x 398, 399 (5th Cir. 2010).; *see also Ga. Firefighters' Pension Fund v. Anadarko Petroleum Corp.*, 99 F.4th 770, 774 (5th Cir. 2024) (quoting *Butler v. S. Porter*, 999 F.3d 287, 297 (5th Cir. 2021)) ("when a party raises new arguments or evidence for the first time in a reply, the district court must either give the other party an opportunity to respond or decline to rely on the new arguments and evidence."). And so, the undersigned will not consider dismissing the TCHRA claim against R&K at

this time.

West states that his knee injury constitutes a disability and that his employer regarded him as disabled. *See* Dkt. No. 50-1 at 3.

Both claims for discrimination based on disability and failure to accommodate a disability under the ADA require the plaintiff to allege a disability. *See Credeur v. La. Through Office of Atty. Gen.*, 860 F.3d 785, 792 (5th Cir. 2017) (quoting *Neely v. PSEG Tex., Ltd. P'ship*, 735 F.3d 242, 247 (5th Cir. 2013)) (To prevail on an ADA failure-to-accommodate claim, an employee must allege that: (1) he is a "qualified individual with a disability"; (2) "the disability and its consequential limitations were 'known' by the covered employer"; and (3) "the employer failed to make 'reasonable accommodations' for such known limitations."); *Amsel*, 464 F. App'x at 399 ("To make out his prima facie case [for discrimination on the basis of disability under the ADA], [the plaintiff] must therefore show that he: (1) suffers from a disability; (2) was qualified for the job; (3) was subject to an adverse employment action; and (4) was replaced by a non-disabled person or was treated less favorably than non-disabled employees.").

The ADA defines "disability" as a physical or mental impairment that substantially limits one or more major life activities, a record of such an impairment, or being regarded as having such an impairment. *See* 42 U.S.C. § 12102(1). "Major life activities" include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* at § 12102(2)(A).

The Fifth Circuit has explained that "whether an impairment is substantially limiting 'is determined in light of (1) the nature and severity of the impairment; (2) its duration or expected duration; and (3) its permanent or expected permanent or long-term impact.'" *E.E.O.C. v. Agro Distribution*, LLC, 555 F.3d 462, 470 (5th Cir. 2009).

West alleges that "he could not guarantee his ability to attend to or perform his tasks at work due to a severe injury to his lower leg and knee." Dkt. No. 31 at 1.

The only major life activity that West alleges that he was substantially limited from is working. "'[W]hen the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires, at a minimum, that [one] allege [she is] unable to work in a broad class of jobs.'" *Drerup v. Consol. Nuclear Sec., L.L.C.*, No. 21-10600, 2022 WL 3335780, at *3 (5th Cir. Aug. 12, 2022) (citing *Kemp v. Holder*, 610 F.3d 231 (5th Cir. 2010)).

West fails to allege how his disability substantially limits his ability to perform either a class of jobs or a broad range of jobs in various classes.

And West has provided only vague and conclusory references to how the knee injury would affect his ability to perform his job. *See Coleman*, 2023 WL 159777, at *3 ("The Court previously dismissed Brown's disability discrimination claim for only vaguely alluding to her mental impairments and making conclusory references to several major life activities.").

And, so, West has failed to allege that he has a disability under the ADA, and the ADA claims against R&K Enterprise should be dismissed without prejudice.

C.    <u>Tortious Interference with Contract Claims</u>

1.    <u>Connors</u>

West states that all Defendants interfered with the contract to "proximately [cause] injury to plaintiff, which resulted in the actual damage or loss to Plaintiff's job income." Dkt. No. 31 at 4. West does not make any specific allegations regarding Connors but alleges that "Defendants were conducting an illicit spy-ring like surveillance against Plaintiff that violated his right to privacy and ultimately led to his wrongful and discriminatory termination." *Id.*

> Under Texas law, the elements of tortious interference with contract are "(1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss."

*Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000).

West alleges he had "a valid employment agreement with R&K to serve as an Occupational Safety and Health Specialist." Dkt. No. 31 at 3. And, so, West has alleged an existing contract.

"[A] person must be a stranger to a contract to tortiously interfere with it." *Morgan Stanley & Co., Inc. v. Tex. Oil Co.*, 958 S.W.2d 178, 179 (Tex. 1997). "This stranger-to-the-contract requirement means that 'a contracting party's agent or employee acting in the party's interests cannot interfere with the party's contract.'" *Mission Toxicology, LLC v. Unitedhealthcare Ins. Co.*, 499 F. Supp. 3d 350, 366 (W.D. Tex. 2020) (citing *Morgan*, 958 S.W.2d at 179). "Thus, to recover for tortious interference against an agent of a contracting party, 'a plaintiff must prove that the agent willfully or intentionally acted to advance the agent's own interests at the

principal's expense.'" *Id.* (citing *Prudential Ins. Co. of Am.*, 29 S.W.3d at 79).

Because Connors is an employee of R&K Enterprise, West must allege that Connors acted willfully or intentionally to advance his own interests at R&K Enterprise's expense. *See id.* West does not allege this, and, so, the Court should dismiss the tortious interference claim against him without prejudice.

### 2.    R&K Enterprise

West has alleged an employment contract between himself and R&K Enterprise. As previously discussed, R&K Enterprise is a party to the contract, and so it cannot tortiously interfere with its own contract.

The Court should dismiss the tortious interference claim against R&K Enterprise with prejudice. *See Genesco Sports Enter., Inc. v. White*, No. 3:11-cv-1345-N BF, 2011 WL 6593415, at *6 (N.D. Tex. Oct. 27, 2011), *rep. & rec. adopted*, 2011 WL 6433704 (N.D. Tex. Dec. 22, 2011) ("'Texas jurisprudence has long recognized that a party to a contract has a cause of action for tortious interference against any third person (a stranger to the contract) who wrongly induces another contracting party to breach the contract.' Thus, the party inducing the breach cannot be a party to the contract.") (citing *Holloway v. Skinner*, 898 S.W.2d 793, 794–95 (Tex. 1995)); *Geolink Ltd. (U.K.) v. Mahmood*, No. 4:21-CV-803, 2022 WL 2124519, at *6 (S.D. Tex. Mar. 18, 2022), *rep. & rec. adopted*, No. 4:21-CV-00803, 2022 WL 2118984 (S.D. Tex. June 13, 2022), *appeal dismissed*, No. 22-20354, 2022 WL 18229789 (5th Cir. July 20, 2022) (dismissing a claim for tortious interference with a contract against a defendant because the defendant was not a stranger to the contract).

3.    Pickel

West alleges:

> a. Plaintiff had a valid employment agreement with R&K to serve as an
> … Occupational Safety and Health Specialist. Plaintiff's agreement with
> the Defendants gave way to a pattern and practice of Plaintiff relying
> on Steven Pickel to communicate his duties, responsibilities, and job
> performance. Steven Pickel was Plaintiff's main contact in regards to
> communicating any day-to-day updates regarding his job to R&K, and
> R&K both encouraged and relied on this same channel for any
> significant communications with Plaintiff.
> b. Steven Pickel was encouraged by R&K to misrepresent the nature and
> purpose of these communications between Plaintiff and R&K, and
> Plaintiff relied on this misrepresentation. As a result, Plaintiff was led
> to depend on Pickel as a work-centered liaison between Plaintiff and
> R&K such that Plaintiff volunteered communications to Pickel that
> would lead to his termination when he otherwise would not had he been
> honestly informed of Steven Pickel's true nature in relation to his job.
> In effect, Defendants were conducting an illicit spy-ring like surveillance
> against Plaintiff that violated his right to privacy and ultimately led to
> his wrongful and discriminatory termination.
> c. Defendant's interference proximately caused injury to plaintiff, which
> resulted in the actual damage or loss to Plaintiff's job income.

Dkt. No. 31 at 4.

If Pickel is acting as an agent for R&K Enterprise, the same general rule

applies that Pickel cannot tortiously interfere with his own contract. *See Morgan*, 958

S.W.2d at 179.

But, if Pickel is properly a stranger to the contract, the Court must analyze

whether West has alleged "(2) a willful and intentional act of interference with the

contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual

damages or loss." *Prudential Ins. Co. of Am.*, 29 S.W.3d at 77.

> Intentional interference does not require an intent to injure, only that "the
> actor desires to cause the consequences of his act, or that he believes that the
> consequences are substantially certain to result from it." "Substantially

certain" requires that the interference be "incidental to the actor's independent purpose and desire but known to him to be a necessary consequence of his action." In short, [Plaintiff] had to prove that [Defendant] intended to interfere with [Plaintiff]'s employment or was substantially certain that such interference would result from Scheetz's telephone call to Dailey. [Plaintiff] also had to prove that such interference was a proximate cause of [Plaintiff]'s termination.

*Wardlaw v. Inland Container Corp.*, 76 F.3d 1372, 1375-76 (5th Cir. 1996) (internal citations omitted).

"To show proximate cause, 'a plaintiff must allege that 'the defendant took an active part in persuading a party to a contract to breach it.'" *M-I LLC v. Stelly*, 733 F. Supp. 2d 759, 775 (S.D. Tex. 2010) (citation omitted). … "It is necessary that there be some act of interference or of persuading a party to breach, for example by offering better terms or other incentives, for tort liability to arise." *Id.* (citation omitted).

*Loco Brands, LLC v. Butler Am., LLC*, No. 6:18-CV-69-JDK-KNM, 2019 WL 3015046, at *11 (E.D. Tex. Jan. 28, 2019), *rep. & rec. adopted*, No. 6:18-CV-69-JDK-KNM, 2019 WL 2281252 (E.D. Tex. May 29, 2019).

West appears to be alleging that, because of Pickel's misrepresentations, West told Pickel the details of his injury. *See* Dkt. 31 at 4; Dkt. 53 at 2. This led Pickel to tell R&K Enterprise about the injury, resulting in R&K Enterprise firing West. *See id.*

But West does not allege that Pickel was substantially certain telling R&K Enterprise about the injury would lead them to terminate West, nor that Pickel persuaded R&K Enterprise to breach the contract. And, so, West has failed to allege a tortious interference with contract claim against Pickel, and the Court should dismiss the claim without prejudice.

II.    Motion for Leave to File Amended Petition

West filed a Motion for Leave to File Amended Petition with an attached proposed amended complaint. *See* Dkt. No. 61.

Pickel contends that the amended complaint fixes typos and adds the line "This misconduct by the parties was done outside the scope of their employment agreements and roles related to defendant R&K," and so West should not be granted leave to file for the same reasons outlined in their Motion to Dismiss. Dkt. No. 68 at 3.

The R&K Defendants state that the amended complaint contains new allegations: "Connors acted as an 'agent' of R&K, Defendants engaged in 'misconduct by the parties…outside the scope of their employment agreements and roles related to defendant R&K, Inc.,' and restatement of a jury demand. Dkt. No. 69 at 1. They also argue West should not be granted leave to file because the second amended complaint is futile. *See id.* at 2.

West's additional allegations are relevant to his claim of tortious interference.

A. <u>Connors as Agent</u>

Under Texas law, the elements of tortious interference with contract are "(1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss." *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000). "[A] person must be a stranger to a contract to tortiously interfere with it ...." *Morgan Stanley & Co., Inc. v. Tex. Oil Co.*, 958 S.W.2d 178, 179 (Tex. 1997).

*Wesner as Tr. of Charles Wesner, Jr. Living Tr. v. Southall*, No. 3:22-CV-0927-B, 2023 WL 3000623 (N.D. Tex. Apr. 18, 2023).

And, so, the issue is whether Connors, as president and CEO of R&K, can be

held individually liable for tortious interference of contract as an "agent of R&K" and if his misconduct "was done outside the scope of [his] employment agreements and roles related to defendant R&K." Dkt. No. 61-2 at 4.

As previously discussed, "the general rule is that a corporation's agent cannot tortiously interfere with the corporation's contract, except under limited circumstances." *Cmty. Health Sys. Pro. Servs. Corp. v. Hansen*, 525 S.W.3d 671, 690 (Tex. 2017). The Texas Supreme Court further explained:

> [U]nder our decision in *Holloway*, when the defendant is both a corporate agent and the interfering tortfeasor, the plaintiff carries the burden of proving as part of its "prima facie case" that the agent "acted in a fashion so contrary to the corporation's best interests that his actions could only have been motivated by personal interests" and thus could not have been acting within the scope of his agency at the time of the interference.

*Id.* at 691.

And "[a] corporate officer's mixed motives – to benefit both himself and the corporation – are insufficient to establish liability." *Powell Indus., Inc. v. Allen*, 985 S.W.2d 455, 457 (Tex. 1998).

"[W]hen determining whether an agent acted against the corporation's interests, we consider the corporation's evaluation of the agent's actions." *Id.* "If the principal 'does not complain about its agent's actions, then the agent cannot be held to have acted contrary to the corporation's interests.'" *Cmty. Health Sys. Pro. Servs. Corp. v. Hansen*, 525 S.W.3d 671, 695 (Tex. 2017) (quoting *Powell Indus., Inc. v. Allen*, 985 S.W.2d 455, 457 (Tex. 1998)).

Because "a plaintiff bringing a claim for tortious interference with contract against a corporate agent must allege that the corporation complained of the agent's

conduct to effectively state a claim," and West has failed to do so even when claiming that Connors acted outside the scope of its employment, he has failed to plead a claim for tortious interference with a contract against Connors. *Adidas Am. Inc. v. Shoebacca Ltd.*, No. 3:20-CV-03248-N, 2021 WL 4399745, at \*2 (N.D. Tex. Sept. 27, 2021).

And, so, the amendment is futile.

B.    <u>Tortious Interference Against Pickel</u>

West's additional allegations that Pickel's misconduct was outside of the scope of his employment seem to support West's argument that he can bring a claim against Pickel for tortious interference with the contract because Pickel was not a party to the contract.

But the Court has already analyzed the claim against Pickel as if he was a stranger to the contract and found the factual allegations to be insufficient. And the additional allegations do not change that analysis. And, so, the amendment is futile.

For these reasons, the Court should deny West's Motion for Leave to File Second Amended Petition [Dkt. No. 61].

## Recommendation

For the reasons explained above, the Court should grant the R&K Defendants Motion to Dismiss [Dkt. No. 35] and grant Pickel's Motion to Dismiss [Dkt. No. 38]. The Court should dismiss the ADA claims against Pickel and Connors with prejudice; should dismiss the TCHRA claims against Pickel with prejudice; should dismiss the TCHRA claims against Connors without prejudice; should dismiss the ADA claims

against R&K Enterprise without prejudice; should dismiss the tortious interference claim against R&K with prejudice; and should dismiss the tortious interference claims against Pickel and Connors without prejudice.

The Court should grant West 21 days from the date of any order adopting these Findings, Conclusions, and Recommendations in which to file an amended complaint to replead its claims that are dismissed without prejudice, if it can, consistent with this recommendation and the conclusions and findings above and should order that, if West fails to do so, any of those claims that it does not replead will be dismissed with prejudice without further notice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: July 19, 2024

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE